WILLIAM BARR, RESPONDENT, *v.* J. H. MITCHELL, APPELLANT.

PROMISSORY NOTE—MAKER OF, WHAT CONSTITUTES.—Where a third person writes his name in blank on the back of a non-negotiable note before the same is delivered to the payee, he becomes liable as a maker of the note, and the payee may write over such signature a promise to pay the money named within to the payee.

APPEAL from Multnomah County.

This is an action against one Silvers and J. H. Mitchell, the appellant, upon a promissory note. The note is as follows:

"PORTLAND, September 11, 1873.

"One year after date, for value received, I promise to pay William Barr six thousand one hundred and sixty-five dollars and fifty cents in United States gold coin, with interest from date at eight per cent. per annum. Interest

payable in like gold coin. I reserve the right to use the said money one or two years longer if I see fit.

"C. S. SILVERS."

It is alleged on the part of the respondent that before the delivery of the note to him, Mitchell indorsed it by writing his name on its back; that Silvers elected to keep said money until the full period of three years from the date of the note; that the note was presented to Silvers for payment on the fourteenth of September, 1876, and notice of demand and non-payment given to Mitchell.

Silvers did not appear in the action. The appellant, Mitchell, answered, denying that he indorsed the note, or wrote his name on the back thereof before the delivery to respondent; and alleging that he did write his name upon the back of said note, but not until long after it had been executed by Silvers and by him delivered to respondent; and not until long after the money for which said note was given, and which was the sole consideration thereof, had been delivered to Silvers by respondent. That such writing of his name on said note and said alleged indorsement by him, Mitchell, was without any consideration whatever, and was not a promise otherwise than for the payment of the debt of another, and that no note or memorandum in writing expressing a consideration had been subscribed by him; and further, that no notice of the non-payment of the note was given to him, Mitchell, within a reasonable time after the making of the note, nor at all until the twenty-fifth day of September, 1876; nor was the same known to him, Mitchell, until that date.

The respondent, in reply, alleges that on the date the note was given, Silvers was indebted to respondent in the sum of six thousand one hundred and sixty-five dollars and fifty cents in United States gold coin, which was due; that said money was worth at the time one per cent. a month interest, and the note was made and delivered for the purpose of procuring an extension of the time for paying the said debt due from Silvers to the respondent.

The jury found for the plaintiff the sum of seven thou-

sand five hundred and ninety dollars and fourteen cents gold coin.

A motion for a new trial was overruled, and on August 30, 1877, judgment was entered in accordance with the verdict, against both defendants, for the sum of seven thousand five hundred and ninety dollars and fourteen cents, and seventeen dollars and twenty-five cents costs and disbursements, from which judgment this appeal is taken.

*Dolph, Bronaugh, and Dolph & Simon,* for appellant:

At most, Mitchell's liability did not exceed that of a guarantor, and if he was liable to that extent he has been discharged by the delay and neglect of Barr in demanding payment of Silvers, and notifying him, Mitchell, of nonpayment. The best modern authority as settled by the highest courts of the greatest commercial states of this Union, favors the abolition of many former distinctions, and the reduction of the liability of all persons who indorse any note in blank to the common standard of responsibility of indorsers technically so-called.

Parsons, in his work on Notes and Bills, vol. 2, p. 119, 120, says: "There is much diversity of opinion among the courts of the different states as to the nature of the contract to be implied from the blank indorsement of one not a party to the bill or note when the paper is negotiable, and the indorsement is made before its delivery to the payee. In some states one indorsing in such manner is *prima facie* regarded as a guarantor, in others as an indorser, and in others as a joint promisor or surety. But in most of the states the effect of such an indorsement is held to depend upon the intention of the parties which may be ascertained by parol evidence. In Massachusetts, however, the presumption is said to be conclusive that the party indorsing in this manner intends to become liable as an original promisor." The same author says (p. 123): "In New York the later cases seem to go to the extent of holding that as a party indorsing in blank is conclusively presumed to be liable only as an indorser in the full legal sense of the term, and, whatever may have been the intent, his engagement

can not be controverted into a guaranty, or any other or different contract whatever." (*Cottrell* v. *Conklin*, 4 Duer, 50; *Coulter* v. *Richmond*, 59 N. Y. 481.)

On the question of notice to a guarantor, Parsons says: "But, on the other hand, he may, having shown a consideration, hold the guarantor, without proof of presentment or ·demand or notice, unless the guarantor can show negligence in the holder, and actual loss sustained by the guarantor from the want of such presentment, demand or notice." Such we take to be the decided weight of authority, although the citations in our notes will show that the authorities are not in harmony on this point. (2 Par. on Notes and Bills, 137, 138, and note c.; *Moakley* v. *Riggs*, 19 Johns. 69; *Kies* v. *Tifft*, 1 Cowen, 98; 19 Wend. 202; *Whitton* v. *Mears*, 11 Met. 563; *Gamage* v. *Hutchins*, 23 Maine, 565; *Lewis* v. *Brewster*, 2 McLean, 21; Id. 569.)

In Ohio the distinction taken between the liability of accommodation indorsers of negotiable and non-negotiable paper is, that the former are liable as joint makers, while the latter are liable only as guarantors and are held entitled to notice of non-payment by the maker. Of the first class are the cases of *Bright* v. *Carpenter*, 9 Ohio, 139; *Robinson* v. *Abell*, 17 Id. 36; *Gale* v. *Van Arman*, 18 Id. 336.

In Missouri, Delaware, Vermont, North Carolina, Minnesota, Rhode Island and Pennsylvania an accommodation indorser is held liable as maker, regardless of the character of the note as to negotiability, while in Illinois and Kansas his liability is said to be that of a guarantor. (60 Mo. 297; 4 Houst. (Del.) 284; 41 Vt. 471; 63 N. C. 191; 11 Minn. 410; 40 Pa. 278; 51 Ill. 434; 2 Kansas, 496.)

In California an accommodation indorser before delivery of a note, whether negotiable or otherwise, is held to be liable only as a guarantor and to be entitled to demand and notice as an indorser. (*Brady* v. *Reynolds*, 13 Cal. 31; *Reeves* v. *Howe*, 16 Id. 152; *Ford* v. *Hendricks*, 34 Id. 673; *Jones* v. *Goodwin*, 39 Id. 493.)

Now, it is an almost universal rule that if A., by letter to B., agrees to become responsible as guarantor for C., provided B. shall give him credit, the liability of A. does not

attach if the credit be given, unless he be duly notified of the acceptance of his guaranty.

Why should not the same rule be applied here? So far as the extension of time on this note beyond the date when it became due on its face is concerned, Mitchell's part of that contract did not amount to more than a letter of credit, saying to Barr if you choose to extend time to Silvers for "one or two years longer," after this note falls due, I guarantee the payment of the note. Whether Barr would elect so to do, Mitchell could no more know what Barr might elect to do than in ordinary cases where a letter of credit is given by A. to C., addressed to B., by which A. agrees to guarantee the payment for goods if B. will furnish them to C., can A. know what B. might decide to do. In each case the matter is prospective, contingent and dependent upon the choice of the party to whom the guarantee is tendered. Why then should Mitchell's liability be different or greater when he said to Barr, if you choose to lend this sum, six thousand one hundred and sixty-five dollars and fifty cents, to Silvers, for one or two years longer after September 11, 1874, I guarantee its payment by him, than would his liability have been if instead he had said to Barr if you choose, on September 11, 1874, to sell Silvers a bill of goods of the value of six thousand dollars, I guarantee that he will pay for them in one or two years thereafter.

Yet, as above stated, the authorities are almost uniform in holding that in the latter case no liability would attach to Mitchell if the goods were sold by Barr to Silvers on the faith of such letter, unless Mitchell were duly notified that his guarantee had been accepted. (*Douglass* v. *Reynolds*, 7 Peters, 113; *Clark* v. *Russell*, 7 Cranch, 69, 92; *Adams* v. *Jones*, 12 Peters, 497; *Rapelye* v. *Bailey*, 3 Conn. 438; *Craft* v. *Isham*, 13 Id. 28; *Oakes* v. *Weller*, 13 Vt. 106; *Mussey* v. *Rayner*, 22 Pick. 223; *Taylor* v. *Wetmore*, 10 Ohio, 490; *Rankin* v. *Childs*, 9 Mo. 674; *Howe* v. *Nickels*, 22 Me. 175.)

Silvers did not contract that he would keep the money one or two years longer after this note became due, and much less can it be said that there was any contract on Barr's part to permit him so to do. The whole matter was

left in uncertainty. Mitchell had the right to suppose the note had been paid by Silvers at maturity, unless he were, within a reasonable time thereafter notified to the contrary by the holder.

But if Mitchell should be regarded as a maker and joint promisor with Silvers in the execution of this note originally, what was his position after September 11, 1874, according to the terms of his contract and the allegations of the complaint? As already remarked, there was no contract between Barr and Silvers that the latter would use, or that the former would permit him to use the money after the note should become due. There must be mutuality in all agreements to render them binding. Barr was not bound by that memorandum to allow Silvers the use of the money longer than the note should fall due, because Silvers was not bound to keep it longer. If, when this note became due, September 11, 1874, Barr chose to consent with Silvers, either by express or implied agreement, that the latter might use the money "one or two years longer," this was a new agreement to which Mitchell was not a party, and the substitution of this arrangement for the contract created by the note, entirely released Mitchell from all liability for the money. If it should be answered that Mitchell, by his indorsement contracted with reference to the contingency that such further arrangement might be concluded between Silvers and Barr, at the maturity of this note, we reply that such fact did not make him a party to the new arrangement when perfected. This was not a mere extension of time for the payment of the money by virtue of simple forbearance on the part of the payee toward the maker.

Suppose that Mitchell and Silvers had appeared as joint makers of this note upon its face, and the memorandum contained in the note had read " we reserve the right to use the money one or two years longer if we see fit;" and when the note fell due Barr had contracted with Silvers to allow him to use the money for the further two years, without Mitchell's knowledge or consent, would not the latter have been thereby released? It certainly would seem so. And is

not the case at bar stronger in point of reason for Mitchell's release than such supposed case?

*Catlin, Killin & Nicholas, and Thayer & Williams*, attorneys for plaintiff:

The contract of indorsement can not be entered into in case of a non-negotiable note. (2 Pars. on Bills and Promissory Notes, 125; *Griswold* v. *Slocum*, 10 Barb. 402; *Haughton* v. *Ely*, 26 Wis. 181.)

By signing his name on the back of such a note, Mitchell evidently contemplated some liability. He signed for a purpose; a purpose was accomplished. Contracts will be held to mean something if possible. The authorities hold that such signing is an absolute guaranty that the money will be paid at all events, or an original promise to pay. The majority of them hold that he is an original promisor or joint maker; all holding that he is not entitled to demand and notice. (Pars. on Bills and Notes, 125; Edwards on Bills and Notes, 167, 230, 273, 649; Story on Bills and Notes, secs. 60, 202; *Josselyn* v. *Ames*, 3 Mass. 274; *Seymour* v. *Van Slyck*, 8 Wend. 405, 408, 422; *Griswold* v. *Slocum*, 10 Barb. 402; *Richard* v. *Warring*, 40 N. Y. (1 Keys) 576; *Cromwell* v. *Hewitt*, Id. (1 Hand.) 491; *Long* v. *S. and H.*, 3 Iowa, 266; *Wilson* v. *R. and V.*, Id. 450; *Hall* v. *Monohan*, 6 Id. 216; *Houghton* v. *Ely*, 7 Am. 52, 64; 2 Hill, 83.)

He is held liable as a maker or guarantor. There can be but one acceptor; a second acceptor is regarded as a guarantor of the acceptor. He guarantees payment to the payee, and him only. (Pars. on Notes and Bills, 125.) The indorsing of a non-negotiable bill is equivalent to drawing a bill against the drawee in favor of the indorsee. (Story on Bills, sec. 60.) He is treated as a new drawer. (Id. sec. 202.)

In *Josselyn* v. *Ames*, 3 Mass. 274, the holder of a non-negotiable note had written a guaranty over the indorsement. The court allowed that to be erased and a promise to pay written over it.

In *Seymour* v. *Van Slyck*, 8 Wend. 422, it was held to be a direct and positive undertaking to pay the note, and not a

conditional one to pay if the maker does not, upon demand after notice.

In *Griswold* v. *Slocum*, 10 Barb. 402, the defendant had indorsed a non-negotiable note as security before delivery. He was held liable as maker or guarantor, and that demand and notice were not necessary.

In *Long* v. *Smyser and Hawthorne*, 3 Iowa, 266, it was held that the holder of such paper may write over the indorsement a waiver of demand and notice. He may sue without first demanding payment of the maker, and without notice of non-payment to the indorser.

In *Wilson* v. *Ralph and Van Schaick*, 3 Iowa, 450, it is held that such indorser is liable to suit without demand upon the maker and notice of non-payment.

In *Hall* v. *Monahan*, 6 Iowa, 216, it is held not necessary for the plaintiff to show diligence; and the want thereof is no defense. The indorser stands in the relation of principal, and not surety.

In *Richards* v. *Wariny*, 40 N. Y. 576, the action was upon a note, of which the following is a copy:

"One year after date we promise to pay Plat Richards eight hundred dollars, with interest, value received.

"JAMES E. WARRING.<br>"JAMES B. CHAPMAN.

"Amsterdam, April 1, 1857."

Signed on the back, "Geo. O. Warring."

It was found by the referee that Geo. O. Warring signed his name on the back of the note before it was delivered to to Plat Richards. Held, that Geo. O. Warring was a maker of the note, an original party to the instrument. A writing is presumed to be truly dated. (Code of Civil Procedure, sec. 766.) And that a promissory note or bill of exchange was given or endorsed for a sufficient consideration. (Id.) It is to be presumed that the signature was appended to a paper at the date thereof. In *Kamm* v. *Holland*, 2 Or. 59, it is held that courts of this state will follow the New York rule in commercial matters. The surrender of an old note, satisfaction of an old debt or forbearance to sue, is a valua-

ble consideration. (Story on Bills and Notes, sec. 183; 1 Parsons on Bills and Notes, 175; 3 Mass. 274.) .

By the Court, BOISE, J.:

The first material matter to be decided in coming to a proper understanding of this cause is to determine the nature of the written instrument on which this action is founded. It is contended by the appellant that the words in this instrument, "I reserve the right to use the said money one or two years longer if I see fit," created as to Mitchell a contingent liability, and was not a part of the note, but was an addition thereto in the nature of a letter of credit. Our construction of this instrument is that it is a non-negotiable promissory note, due three years from date with the right in the maker to pay the same at the expiration of any time after one year from the date. This construction must dispose of all the numerous questions raised in the case, except one which is: What is the liability of a person, other than the payee who writes his name on the back of a non-negotiable note before the same is delivered to the payee? Is he a maker, a guarantor, or an indorser, and is he entitled to demand and notice of nonpayment in order to fix his liability? In the case of *Kamm* v. *Holland*, 2 Or. 59, this court decided that one who writes his name on the back of a negotiable note before delivery is to be treated as an indorser and is entitled to demand and notice. In that case it was contended that Holland, who had written his name on the note before it was delivered, was a maker and not an indorser, and many respectable authorities were cited to support this position. In deciding the case the court say: "We might decide the question either way, and have an abundance of authority for so doing." In that case the court followed the rule as established in the state of New York. But in that state a different rule is established as to the liability of one who thus puts his name on a non-negotiable note, and he is not entitled to demand and notice, but is held liable as a maker or guarantor. (*Griswold et al.* v. *Slocum*, 10 Barb. 402.)

In Story on Promissory Notes, the general rule is laid

down that where one makes a blank indorsement on a non-negotiable note at the time the note is made, such indorser is liable as an original promisor or maker of the note, and the payee is at liberty to write over the blank signature the words: "For value received I promise to pay the money within named" to B., the payee. This would in effect make him liable as maker. This is also the rule as stated in Parsons on Notes and Bills, vol. 2, p. 125, where the author says: "In those states where the rule is adopted that a 'third person' indorsing paper in blank before delivery of it to the payee, is liable as an indorser only. It is not applied in case the paper be not negotiable, inasmuch as a legal indorsement can only be made on negotiable paper; but an indorser in such case is held liable as a maker or grantor," and in such a case is not entitled to demand and notice. We think the rule is, as established by the authorities, that when a person writes his name in blank on the back of a non-negotiable note, before the same is delivered to the payee he is liable as a maker. There was no error in the trial of this cause in the circuit court, and the judgment will be affirmed with costs.