[Filed January 12, 1891.]

## D. M. OSBORNE & CO. *v.* F. HUBBARD.

NEGOTIABLE NOTE—SEAL, EFFECT OF.—An instrument in the form of a negotiable promissory note, but with a scroll in which the word seal was written thus [SEAL] after the signature of the maker, *is a sealed instrument,* and not a negotiable promissory note, though there is no reference to a seal in the body of the instrument.

Jackson county: L. R. Webster, Judge.

Plaintiff appeals.   Reversed.

*Francis Fitch,* for Appellant.

*H. K. Hanna,* and *J. R. Neil,* for Respondent.

LORD, J.—The plaintiff brought his action upon the following instrument:

"$90.00.                                        May 12, 1884.

"On or before the first day of October, 1884, for value received, I, or we, or either of us, promise to pay to the order D. M. Osborne & Co. the sum of ninety dollars, in U. S. gold coin, at the office of ———, in ———, with interest in like gold coin [at] ten per cent per annum from September 1st until paid; and in case suit is instituted to collect this note or any portion thereof, I, or we, or either of us, promise to pay with reasonable dollars as attorney's fees in such suit.

"P. O. Willow Springs, Or.        C. C. PARKER. [SEAL.]"

It is alleged "that prior to the delivery of said note to the payee, this plaintiff, the defendant indorsed said note by writing his name across the back thereof, and thereupon said note was delivered to this plaintiff; that said plaintiff is the owner and holder of said note; that said note has not been paid, nor any part thereof; that said C. C. Parker and said defendant have failed and refused to pay the same; that twenty-five dollars is reasonable value of services," etc. A demurrer was interposed to the effect that no cause of action was stated against the defendant, and sustained; and the plaintiff refusing to proceed, judgment was given for the defendant and his costs, from which this appeal is brought. The contention involved is whether the instrument sued on is a negotiable promissory note, and as such entitled to the special privileges conferred by the law-merchant. In form, the instrument executed is a negotiable promissory note, except that the signature has after it a seal, thus: [SEAL.]

It is insisted for the plaintiff that by the affixing of a seal to his signature by the maker of the instrument, its negotiable quality was destroyed and it became a non-negotiable note; while it is claimed for the defendant that the mere affixing of a seal to the signature does not make it a sealed instrument, unless there is a recognition of the seal in the body of the instrument by some such phrase as "witness my signature and seal," or "signed and sealed,"

for otherwise the door would be thrown open to frauds and for-geries by the facility with which such seals could be superadded —in a word, that the seal annexed is mere surplusage. This is undoubtedly the view taken by the Virginia cases, but which are conceded in *Cromwell* v. *Tate's Ex.* 7 Leigh, 301, 30 Am. Dec. 506, not to be in harmony with the common law, and are largely against the weight of authority. (*Anthony* v. *Harrison,* 14 Hun, 198; 1 Dan. Neg. Inst. § 32; 1 Rand. C. Pap. §§ 70, 71.)

In this state, while a seal may be made by a wafer or wax attached to the instrument, it may be also made by a scroll with a pen after the signature to the instrument at the time of its execution and delivery. Nor does it seem that it is necessary that the scroll or seal must be recognized in the body of the instrument. "For," ARCHER, J., said, "if he execute and deliver it with the scroll attached, it being considered here as equivalent to the wax or wafer, it is as much his seal as if he had declared it to be so in the body of the instrument. The fact of the clause of attestation not appearing in the usual form of 'signed, sealed and delivered,' can in reason make no difference; for the question always is, is this the seal of the obligor? and if he has delivered it with the scroll attached, it is his seal, and must be so considered; for whether an instrument be a specialty, must always be determined by the fact whether the party affixed a seal; not upon the assertion of the obligor in the form of the instrument or by the form of attestation." (In *Brown* v. *Jordhal,* 32 Minn. 137, 50 Am. Rep. 560, the identical question raised here was thus disposed of by GILLFILLAN, C. J.: "But the appellant contends that merely placing upon an instrument a scroll or device, such as the statute allows as a substitute for a common-law seal, without any recognition of it as a seal in the body of the instrument, does not make it a sealed instrument. * * * Such words in the *testimonium* clause as 'witness my hand and seal,' or 'sealed with my seal,' would establish that the scroll or device was used as a seal. No such reference in the body

of the instrument was necessary in the case of a common law seal. (*Goddard's Case*, 2 Coke R. 5a, 7 Bac. Abr. (Bouvier's Ed.) 244.) Nor is there any reason to require it in the case of the statutory substitute, if the instrument anywhere shows clearly that the device was used as and intended for a seal. It would be difficult to conceive how the party could express that the device was intended for a seal more clearly than by the word 'seal' placed within and made a part of it. This was an instrument under seal."

In *Whittington* v. *Clark*, 8 Sm. and M. 485, THATCH, J., said: "Whenever it is manifest that the scroll is intended to be used 'by the way of seal', it must have that effect whether it appears from the body of the instrument, or from the scroll itself." (*McRaven* v. *McGuire*, 9 Sm. & M. 34.) In the case at bar, the seal is not simply a scroll made with a pen opposite the signature, but the word "seal" is within the scroll and made a part of it. In what other way the party could have more clearly evinced that it was intended and used as a seal, it would be difficult to conceive. As a sealed instrument, the contention for the plaintiff is, that the effect of sealing the instrument, though it was in form a negotiable promissory note, was simply to destroy its negotiable quality, leaving it in all other respects subject to the rules of law applicable to non-negotiable notes, and that the defendant, by writing his name across the back of it before delivery to the plaintiff as payee, rendered himself liable as a maker. (*Barr* v. *Mitchell*, 7 Or. 346.) Under our statute, "the seal affixed to a writing is primary evidence of its consideration. In other respects, there is no difference between sealed and unsealed writings, except as to the time of commencing actions or suits thereon. A writing under seal may therefore be modified, or discharged by a writing not under seal, or by an oral agreement otherwise valid." (Hill's Code, § 753.) A seal, then, is still something more than a mere formality in the execution of the instrument under our law, but is a matter of substance, and not of surplusage, giving or imparting to the instrument certain legal effects which do

XX OR.—21.

not attach to unsealed instruments as the statutory limita-
tion. (1 Rand. Com. Pap. § 70.) Its effect was to deprive
the instrument sued on of its character as a negotiable promis-
sory note, and thereby to convert into a bond, or single bill,
or as more often designated, a note under seal, which is not
entitled to the privileges and immunities of the mercantile
law. TILGHMAN, C. J., said such an instrument was "a bond
without condition, sometimes called a single bill, and differs
from a promissory note in nothing but the seal which is
affixed to it." (*Farmer's etc. Bank* v. *Greiner*, 2 S. & R. 115.)
Mr. Daniel says: "If a seal be affixed to a paper in the
ordinary form of a note, its character as such is destroyed,
and it is thereby converted into the deed or bond of the
maker, who is then termed the obligor, and the instrument
is not subject to the peculiar doctrines that are applicable to
mercantile securities." A bond of this character is sometimes
designated as a single bill, or obligatory writing, but more
usually as a sealed note, but by whatever name called, such
an instrument cannot with strict legal propriety be termed a
promissory note in the commercial sense and is distinguish-
able in the incidents which attach to it. As a writing it is
an acknowledgment of indebtedness in a certain sum to be
paid on a certain day and differs from a promissory note in
having a seal affixed to it, which operates to convert it into
a non-negotiable instrument, thereby depriving it of its
character as commercial paper. (*Muse* v. *Dantzler*, 85 Ala.
359; 1 Randolph on Com. Pap. §§ 70, 73.)

The effect, then, of the seal was to convert the instrument
under consideration, though in the form of a negotiable
promissory note, into a non-negotiable instrument or note,
and while it may be entitled to a statutory limitation different
from or longer than a non-negotiable note not under seal,
yet it being similar in other respects, it is subject to the same
legal rules as are applicable to such non-negotiable notes.
This being so, within the ruling made in *Barr* v. *Mitchell*,
*supra*, that a person who signs his name on the back of a
non-negotiable note before delivery does not in a commercial

sense become an indorser of it with the rights and liabilities
of a simple indorser, but is liable as a maker; the action is
properly brought against the defendant, who is liable as a
maker.

It results that it was error to sustain the demurrer, and
the judgment must be reversed and the cause remanded.